The plaintiffs — Richard Pizitz, Merritt Pizitz, Jill Pizitz, Richard Pizitz, Jr., and Susan Pizitz Bosshard — sued the defendants — Gilford Partners, H. Robert Holmes, Holmes-Gilford General Partners, and Gilbrooke Associates, Inc. — alleging various violations of the Alabama Securities Act, §§ 8-6-1 through -33, Ala. Code 1975, arising out of the sale of an unregistered security to the plaintiffs' partnership, Pizitz Family Investment Partnership IX (hereinafter the "Pizitz Partnership").[1] The plaintiffs alleged (1) that the defendants had failed to register the limited partnership interest in Gilford Partners, in violation of § 8-6-4; (2) that Holmes and Holmes-Gilford had failed to register as agent and dealer, respectively, in violation of § 8-6-3; and (3) that the defendants had made misrepresentations and omissions in information sent to the plaintiffs, in violation of § 8-6-17. The plaintiffs also alleged causes of actions for violation of15 U.S.C. § 77l(2), for common-law fraud, and for breach of fiduciary duty. The defendants moved to dismiss for lack of personal jurisdiction; the plaintiffs responded and moved for a partial summary judgment for statutory damages, under §8-6-19(a)(1), on the plaintiffs' claim of failure to register the security, in violation of § 8-6-4, and failure to register as an agent and a dealer, in violation of § 8-6-3(a). The trial court denied the motion to dismiss and granted the partial summary judgment as to Gilford Partners only.;[2] The partial summary judgment was made pursuant to Rule 54(b), Ala.R.Civ.P.
Gilford Partners appeals, raising two issues: (1) whether the trial court erred in denying the motion to dismiss for lack of personal jurisdiction; and (2) whether the defendants presented substantial evidence that the Pizitz Partnership was an "institutional buyer" under § 8-6-11(a)(8), evidence needed to defeat the plaintiffs' motion for summary judgment.
 Personal Jurisdiction
Gilford argues that the circuit court erred in failing to dismiss for lack of personal jurisdiction. In its order denying Gilford's motion to dismiss, the trial court stated:
 "[The Pizitz Partnership cites] a number of bases for the Court's assertion of personal jurisdiction over Gilford. Because the Court has determined that the sale of the Gilford limited partnership interest without registration was unlawful, only one of these grounds need be considered. As the court concluded in Florendo v. Pan Hemisphere Transport, Inc., 419 F. Supp. 16
(N.D.Ill. 1976), nonresident defendants who unlawfully sell unregistered securities in the forum state subject themselves to personal jurisdiction in the state in actions to enforce statutory remedies for such unlawful sales. As is clear from Ala. Code *Page 406 
§§ 8-6-2(8) and 8-6-12, Gilford's unlawful 'offer to sell' and acceptance of [the Pizitz Partnership's] 'offer to buy' the security occurred in Alabama."
We affirm the denial of Gilford's motion to dismiss for lack of personal jurisdiction. Rule 4.2, Ala.R.Civ.P., states, "A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's . . . (C) Causing tortious injury or damage by an act or omission in this state. . . ." Section 8-6-12, Ala. Code 1975, provides that the Securities Act of Alabama, §§ 8-6-1 through -33, applies to "persons who sell or offer to sell when (1) an offer to sell is made in this state, or (2) an offer to buy is made and accepted in this state." The section further provides that "[a]n offer to sell or to buy is made in this state . . . when the offer (1) originates from this state, or (2) is directed by the offeror to this state and received at the place to which it is directed (or at any post office in this state in the case of a mailed offer)." § 8-6-12(c). The statute provides that the offer to buy or sell is accepted "when acceptance (1) is communicated to the offeror in this state, and (2) has not previously been communicated to the offeror, orally or in writing, outside this state; and acceptance is communicated to the offeror in this state . . . when the offeree directs it to the offeror in this state. . . ." § 8-6-12(d).
The court in Florendo v. Pan Hemisphere Transport, Inc.,419 F. Supp. 16 (N.D.Ill. 1976), found that the defendants in that case, who had failed to register the security sold to the plaintiff, "[had] subjected themselves to the jurisdiction of [the Illinois] court. Because the injury . . . took place in Illinois, that state was the situs of the tortious act."419 F. Supp. at 18. The court further stated that exercising jurisdiction did not offend the "traditional notions of fair play and substantial justice," because the defendants should have foreseen the possibility of being sued in the Illinois forum. Id. at 18-19. The district court held that an action such as that against the defendants was foreseeable because "[the] defendants [had] sold an interest in a limited partnership to a specifically identified purchaser residing in Illinois." The court added that "[i]t [was] certainly fair under the circumstances to require them to litigate a controversy concerning that sale in Illinois." Id. at 19.
In the present case, Gilford concedes that, under §§ 8-6-11
and 8-6-12, the sale of the security is deemed to have occurred in Alabama. It argues, however, that the statutes create a "legal fiction" that is insufficient to allow the trial court to assert personal jurisdiction over it. We disagree. As stated in Florendo, the sale of an unregistered security causes a "tortious injury," and the sale, under §§ 8-6-11 and 8-6-12, occurred in Alabama. Therefore, we hold that Gilford had sufficient contacts with this State because it may be legally responsible for "causing tortious injury or damage by [its] act or omission in this state." See Ala.R.Civ.P. 4.2(a)(2)(C).
 Summary Judgment
"It is unlawful for any person to offer or sell any security in this state unless: (1) It is registered under this article; (2) The security is exempt from registration under section8-6-10; or (3) The transaction is exempt under § 8-6-11." §8-6-4, Ala. Code 1975; see also § 8-6-11(a) (expressly stating that §§ 8-6-3 through 8-6-9 do not apply to the listed exempt transactions). Gilford argues that the trial court erred in entering the summary judgment in favor of the Pizitz Partnership because, Gilford argues, it had presented substantial evidence that Pizitz Partnership was an "institutional buyer" and, therefore, that the transaction was exempt from the registration requirements under § 8-6-11(a)(8).
The trial court held that, given the beneficent purpose of the blue sky laws,[3] the exemption was to be narrowly construed.See 69 Am.Jur.2d Securities Regulation-State § 6 (1973) ("the general view is . . . that blue sky laws, being enacted for the protection of *Page 407 
the public, should be liberally construed to effectuate that purpose"). Section 8-6-11(a)(8) states that a transaction is exempt from §§ 8-6-3 through 8-6-9 of the Alabama Securities Act if it contains
 "[a]ny offer or sale to a bank, savings institution, credit union, trust company, insurance company or investment company as defined in the Investment Company Act of 1940, pension or profit-sharing trust or other financial institution or institutional buyer, or to a dealer, whether the purchaser is acting for itself or in some fiduciary capacity. . . ."
In its order, the trial court interpreted § 8-6-11(8) as follows:
 "The maxim ejusdem generis dictates that, ' "when general words follow an enumeration of words of a particular and specific meaning, such general words are held to apply only to persons or things of the same kind, as those designated by the particular words. . . ." ' Ex parte Capital City Asphalt, Inc., 437 So.2d 1291, 1293-94 (Ala. 1983) (citation omitted). The statutory phrase 'other financial institution or institutional buyer' is immediately preceded by 'bank, savings institution, credit union, trust company, insurance company or investment company as defined in the Investment Company Act of 1940, pension or profit-sharing trust.' The term institutional buyer' must, therefore, be limited to the same kind of institutional investors as those specifically enumerated and cannot be expanded to include wholly different classes of investors such as the Pizitz Partnership.
 ". . . None of the specific institutions enumerated in the statute or comment includes private investors or groups of private investors buying securities for their own accounts. Moreover, none of these specified categories of institutions is qualified, for purpose of application of the exemption, by size, wealth, or sophistication requirements. Therefore, the inclusion of such buyers within the definition of 'institutional buyer' based on wealth and sophistication would violate the doctrine of ejusdem generis.
". . . .
 "Although the conclusion that investment partnerships such as the Pizitz Partnership are not 'institutional buyers' is compelled both by principles of statutory construction and the mandate that exemptions to the Alabama Securities Act be narrowly construed, the Court is not satisfied that there is any logic to requiring registration of securities sold to partnerships composed of wealthy, sophisticated individuals whose assets and investment experience might exceed that of many small savings institutions or colleges. This incongruity does not dictate a different result, however, since the same argument could be made with respect to wealthy, sophisticated individuals, who would not be exempt, under even the broadest conceivable definition of 'institutional buyer.' "
We agree with the trial court and hold that, as a matter of law, the § 8-6-11(a)(8) exemption for sales to "institutional buyers" does not apply to Gilford's sale to the Pizitz Partnership. There being no genuine issue of material fact, we affirm the summary judgment in favor of the Pizitz Partnership. Rule 56, Ala.R.Civ.P.
AFFIRMED.
HORNSBY, C.J., and ALMON, SHORES and STEAGALL, JJ., concur.
[1] The Pizitz Partnership was created for the sole purpose of purchasing and retaining investments on behalf of the individual family member investors.
[2] The parties agreed for the trial court to reserve ruling on the plaintiffs' motion for a partial summary judgment with respect to the remaining defendants.
[3] The term "blue sky laws" originated with an early description of the purpose of state security laws as protecting investors against "speculative schemes which have no more basis than so many feet of blue sky." Hall v. Geiger-Jones Co., 242 U.S. 539,37 S.Ct. 217, 61 L.Ed. 480 (1917).