The appellant, Willie Elijah Sheffield, was convicted in a nonjury trial of theft of property in the first degree,see § 13A8-3, Code of Alabama 1975. He was sentenced to five years' imprisonment: that sentence was split and he was ordered to spend 12 months on work release and the remainder on probation, and was fined $1,000 to go in the crime victims compensation fund.
The charge in the indictment arose from a real estate transaction between the appellant and Lillian Andrews. The property referred to in the indictment was an interest in land owned partly by Andrews. The specifics of the transaction are not germane to this appeal.[1] We need address only one issue raised by the appellant.
The appellant claims that the trial court erred in denying his motion to dismiss his indictment, in which he argued that a parcel of land could not be the subject of a charge of theft of property in the first degree. Specifically, the appellant argues that because the location of real property cannot be changed, land does not fall within § 13A-8-1(10), which defines "property," in part, as "property (whether real or personal) the location of which can be changed." Whether an interest in real property can be a object of a theft of property appears to be a matter of first impression for this court.
The indictment specifies the property stolen as "an Interest in Real Estate." It charged that the appellant
 "did knowingly obtain by deception property known to the Grand Jury as an Interest in Real Property, said property being of a value in excess of $1000 (one thousand dollars) and owned by Lillian Andrews, . . . with the intention of depriving said Lillian Andrews of said property, in violation of Section 13A-8-3."
Section 13A-8-2 defines the offense of theft of property as follows: "A person commits the crime of theft of property if he: . . . (2) [k]nowingly obtains by deception control over the property of another, with intent to deprive the owner of his property." Section 13A-8-1(10), defines "property" as,
 "Any money, tangible or intangible personal property, property (whether real or personal) the location of which can be changed (including things growing on, affixed to or found in land and documents, although the rights represented hereby have no physical location), contract right, chose-in-action, interest in a claim to wealth, credit or any other article or thing of value of any kind."
In determining whether real property falls within this definition, we first consider the commentary to §§ 13A-8-2
through 13A-8-5,[2] which states in pertinent part: *Page 901 
 "The purpose of § 13A-8-2 is to create a unified theft offense which eradicates the common law distinctions between the crimes of larceny, embezzlement and false pretenses. The Criminal Code takes the view that these property crimes, possessing the same general nature, should not be treated as theoretically different, thus not allowing one accused of one form of theft to escape a legal sanction because of proof of a different form which interferes with property rights in essentially the same way.
 "The bulk of the Alabama law of larceny was found in former §§ 13-3-50 and 13-3-51, although additional statutes existed. In the main, these deal, not with the nature and elements of larceny, but with the kind of property subject to larceny, or the circumstances of its location, or its value. Thus, common law distinctions have governed liability. Larceny is defined in Alabama as (1) the felonious (and trespassory) taking and carrying away of (2) the personal property of another (3) with intent to convert it or deprive the owner of it. Livingston v. State, 44 Ala. App. 559, 216 So.2d 731 (1968). . . .
". . . .
 "At common law, the subject of larceny must have been the personal goods of another. The result has been that the subject matter of larceny generally has been artificially and illogically restricted. The following were outside the scope of this crime: real property, including buildings, fixtures, things which grew on the land (trees, crops, vegetables), minerals and ores; choses in action (deeds, notes, drafts, written contracts, important letters); undomesticated animals; and intangibles. Thus, in Alabama the severing and carrying away of growing crops or trees in one continuous act was but a mere trespass, not larceny, as distinguished from a taking of severed crops, McQueen v. State, 10 Ala. App. 244, 65 So. 310 (1914) (applied Alabama Code of 1907), a result since changed by a succession of legislative changes (incorporated in former § 13-3-50).
". . . .
"False Pretenses:
". . . .
 "The general Alabama statute [proscribing false pretenses], former § 13-3-90, contained broad language describing the property protected: 'any money or other personal property . . . .'[3] The Criminal Code definition is essentially the same.
 "The issue posed by the Criminal Code is not whether, in a technical sense, the property is 'real' or 'personal,' but whether it is movable. If it is movable, then its location can be changed, and accordingly, it is subject to theft. If it is not movable, then it is not subject to 'obtained or unauthorized control' under the theft article. Thus, under the Criminal Code, things severed or severable from real estate (timber, crops, minerals, fixtures, etc.) and title documents are subject to theft. This provision accords substantially with Alabama law, except that in the case of growing crops it removes the necessity of proving an interval of time between their severance and their removal. Under the Criminal Code, a contemporaneous severance and manucaption would constitute theft.
 "It should be noted that other contemporary criminal code revisions include as theft the transfer, or the attempted transfer, of real property as theft. Thus, a trustee holding legal title to land would be guilty of theft if he exercised 'unauthorized control' over the land by conveying it for his own personal benefit, or if a grantee by deception or by threat obtained a deed to land from his grantor. Under those proposals, a theft would have been committed, as measured by the economic loss to the victim of the transfer. Article 1 of Chapter 8 takes no position on the question. Cf. Proposed Revision Texas Penal Code § 31.07(7), Michigan Revised Criminal *Page 902 
Code § 3201(i), Proposed New Federal Criminal Code § 1741(f)."
Confusion as to the types of property that can be the subject of theft and theft-related offenses has not burdened Alabama alone. However, in most states, the evolution of the answer to this question has produced a broader definition of "property" than it has in Alabama — a definition that, in most instances, explicitly and specifically includes real property. To better understand the clutter from which such an all-encompassing definition has arisen and the power of its simplicity, we track this evolution through two reference materials.
The first is the commentary to § 223.2 of the Model Penal Code (1980).[4] It expounds on the Model Code's definition of "property" as it relates to the provisions concerning theft and related offenses. This definition is found in § 223.0, which reads in pertinent part:
"§ 223.0. Definitions.
 "In this Article, unless a different meaning plainly is required:
". . . .
 "(6) 'property' means anything of value, including real estate, tangible and intangible personal property, contract rights, choses-in-action and other interests in or claims to wealth, admission or transportation tickets, captured or domestic animals, food and drink, electric or other power."
Regarding the breadth of this definition, the commentary states:
 "The comprehensive definition of 'property' is intended to abrogate whatever still survives of the artificial common-law restrictions on the scope of larceny and the other theft offenses. These restrictions on the kinds of property that might be the subject of theft were developed at a time when larceny was a capital offense and when there was understandable pressure not to expand its coverage. The limitations clustered around two principal notions: (i) that some things had no value, e.g., domestic animals; and (ii) that real estate was immovable and fairly indestructible and could therefore safely be excluded from theft penalties. The real estate exception was extended, moreover, to exclude fixtures, growing crops, and deeds from punishment for theft. The resulting deficiencies in the law of theft have been the subject of a great deal of piecemeal remedial legislation that has vastly increased the bulk of theft law and unduly complicated its administration. The definition of 'property' in Section 223.0(6) includes anything that is part of one person's wealth and that another person can appropriate. The enumeration serves both to illustrate the general principle and specifically to negate the traditional restrictions that have been noted.
 "At the time the Model Code was drafted, the confusion of contemporary law indicated the need for explicit inclusion of real estate within the definition of theft. While some jurisdictions made realty the subject of theft either by false pretenses or by embezzlement, others appeared to permit only a prosecution for false pretenses in cases involving the appropriation of interests in land. In Ohio, the phrase 'anything of value' appeared in both the false-pretense and embezzlement statutes but was construed to include real estate only in the former. It seems clear that a theft prosecution should be possible where the actor, having power as trustee, attorney, or otherwise to dispose of another's real estate, does so to his own benefit in violation of his trust. Section 223.2(2) explicitly includes such conduct. The inclusion of real estate within the definition of 'property' also has the effect of extending the theft provisions to situations where the actor secures title or other interest in real property by deception or threat. Such conduct is punished by Sections 223.3 [proscribing *Page 903 
theft by deception] and 223.4 [proscribing theft by extortion] of the Model Code.
 "The overwhelming majority of codes and proposals drafted after the formulation of the Model Code have adopted expansive definitions of the type of 'property' that can be the subject of theft. Generally, these statutes include real estate.[10] There are, however, a few recently drafted codes and proposals that limit the coverage of theft provisions to personal property and to real property that has been 'severed.'[11]
Model Penal Code § 223.2 commentary at 166-68 (1980) (other footnotes omitted; emphasis added).
Our second source of a concise statement of the evolution of the concept of property in the context of theft and theft-related crimes is 2 Wayne R. LaFave Austin W. Scott, Jr., Substantive Criminal Law (1986), which states, in pertinent part:
 "At common law, larceny was limited to misappropriation of goods and chattels — i.e., tangible personal property. It could not be larceny to carry away real property. . . . At common law one could not steal intangible personal property, including such substantial choses in action as stocks, bonds, checks or promissory notes, all of which are in the form of documents. Written documents were considered, for purposes of larceny, to be merged into the things which they represented — so that a deed, representing real estate, or a contract, representing an intangible right to performance, could not be stolen.
 "Modern statutes in all jurisdictions have broadened the scope of larceny to include such intangible personal property as written instruments embodying choses in action or other intangible rights. In addition, a number of states have statutes making it larceny to steal such specific items savoring of real property as minerals, trees, crops, and fixtures,[6] with no requirement of two separate acts of severance and asportation. The trend of the modern criminal codes is to include any sort of property of value which can be moved.[8] *Page 904 
2 LaFave Scott, supra, § 8.4(a) (other footnotes omitted; first emphasis added; second emphasis original).
 "Embezzlement statutes are sometimes worded in terms of 'property which may be the subject of larceny,' or words to that effect . . . .
 "In some states, however, embezzlement is defined, as to the property requirement, more broadly than is the case with larceny. The statute may punish the embezzlement of real as well as of personal property.[16] On principle, it seems clear that, although one cannot commit larceny of a plot of real estate (for it cannot be moved, as larceny requires),[17] yet one (e.g., a trustee, agent, guardian) who has power to sell or mortgage another's real estate, and who deprives the other of it by fraudulently transferring it to a bona fide purchaser or mortgagee, ought to be guilty of embezzlement.[18]
2 Lafave Scott, supra, § 8.6(c) (emphasis in original).
 "The original English false pretenses statute covered only 'money, goods, wares or merchandises,' and thus was limited to tangible personal property and money. Modern statutes, although not uniform in language, have generally expanded this list to include 'anything which can be the subject of larceny' or by adding, at the end, 'or other valuable thing,' 'or other property' or 'or anything of value.' Such provisions generally are construed to include written instruments representing choses in action (stocks and bonds, checks and promissory notes, savings-bank deposit books, insurance policies) and other documents representing intangible rights (deeds, tickets, stamps). While the asportation element of larceny requires that larceny be limited to property which can be moved, false pretenses (like embezzlement) need not be so limited, there being no asportation element in false pretenses (or embezzlement). Thus one who defrauds another of title to real property should, on principle, be guilty of false pretenses; but the statutes which speak of obtaining 'property' or a 'valuable thing' are perhaps somewhat ambiguous, *Page 905 
at least when read in the light of the early limitation of false pretenses to personal property; so that the cases on real property are in conflict.[66]"
2 LaFave Scott, supra, § 8.7(e) (other footnote omitted).
Thus, we began our discussion of the construction of §13A-8-1(10), defining "property," with the observations in two well respected commentaries that Alabama's theft statutory scheme limits its coverage to personal property and to real property that has been severed and also with the observation in the commentary to § 13A-8-2 through 13A-8-5 that "[a]rticle 1 of Chapter 8 takes no position on the question."
In construing the definition of "property" in § 13A-8-1(10), we follow the statutory mandate that "[a]ll provisions of [Title 13A] shall be construed according to the fair import of their terms to promote justice and to effect the objects of the law, including the purposes stated in Section 13A-1-3." §13A-1-6. Section 13A1-3 states:
 "The general purposes of the provisions of this title are:
 "(1) To proscribe conduct that unjustifiably and inexcusably causes or threatens substantial harm to individual and/or public interests;
 "(2) To give fair warning of the nature of the conduct proscribed and of the punishment authorized upon conviction;
 "(3) To define the act or omission and the accompanying mental state that constitute each offense;
 "(4) To differentiate on reasonable grounds between serious and minor offenses and to prescribe proportionate penalties for each;
 "(5) To insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the rehabilitation of those convicted and their confinement when required in the interests of public protection; and
 "(6) To prevent arbitrary or oppressive treatment of persons accused or convicted of offenses."
The focus in § 13A-1-6 on the "fair import of [a penal statute's] terms" is the legislature's manifestation of its "preference for the meaning of the statute over legislative intent as a criterion of interpretation." 2A N. Singer,Sutherland Statutory Construction § 45.07 (5th ed. 1992). "The reference to a 'meaning of the statute' which is juxtaposed with and therefore distinct from legislative 'intention,' expresses concern for giving effect to the way in which the statute is understood by others than the members of the legislature itself." Id. "[I]nquiry begins not with conjecture about what [the legislature] would have liked to have said when it wrote the statute or with what [the legislature] would say today given the chance, but rather what [the legislature] indeed expressed in the statutory context." Id. See also Colliv. Real Estate Commission, 169 Conn. 445, 364 A.2d 167, 172
(1975) (cited in 2A Singer, supra, § 45.07 at n. 1) ("The intention of the legislature is found not in what it meant to *Page 906 
say, but in the meaning of what it did say. It is not the function of the court to speculate upon any supposed intention not appropriately expressed in the act itself"). See Clementsv. State, 370 So.2d 723, 725 (Ala. 1979), overruled on otherground, Ex parte Beck, 396 So.2d 645 (Ala. 1980) ("[p]enal statutes are to reach no further in meaning than their words");Alabama Industrial Bank v. State ex rel. Avinger, 286 Ala. 59,62, 237 So.2d 108 (1970) ("the court knows nothing of the intention of an act, except from the words in which it is expressed, applied to the facts existing at the time"). Cf. Exparte Sanders, 612 So.2d 1199, 1201 (Ala. 1993) ("the [legislative] intent is gathered from the language of the statute itself, but reason and necessity for the statute are also relevant"). In following the directive of § 13A-1-6, however, we are most mindful of not giving effect to the statute according to the meaning members of the public might arbitrarily understand it to have instead of the meaning communicated by the language of the statute. See 2A Singer,supra, § 45.08.
In looking at the "fair import of [the statutory] terms," we are most impressed with the legislature's failure, in enacting § 13A-8-1, to explicitly include real property in the definition of "property," as the overwhelming majority of states have done. As the commentary to § 13A-8-1 notes, "Most of the definitions are derived from Illinois Criminal Code, Model Penal Code, New York Revised Penal Law, and the Michigan Revised Criminal Code." The Illinois Code defines "property" for purposes of the offenses against property as follows: " '[P]roperty' means anything of value. Property includes real estate . . . ." 720 ILCS 5/15-1 (1994 State Bar Edition). As we have noted above, the Model Penal Code defines "property" as "anything of value, including real estate." The New York Penal Code defines "property," as meaning, among other things, "real property." N.Y. Penal Law § 155.00(1) (McKinney 1988). The Michigan Penal Code's definition of the crime of false pretenses prohibits, in pertinent part, a false pretense that "cause[s] any person to grant, convey, assign, demise, lease or mortgage any land or interest in land." Mich.Comp. Laws Ann. §750.218 (West 1991).
"It is a fundamental principle of statutory construction that in enacting the statute the legislature had full knowledge and information as to prior and existing law and legislation on the subject of the statute." Miller v. State, 349 So.2d 129, 131
(Ala.Cr.App. 1977). It is presumed to be aware of both the language and the judicial interpretation of pertinent, existing law when it passes legislation. In re Haas, 48 F.3d 1153 (11th Cir. 1995). See also Belcher v. McKinney, 333 So.2d 136 (Ala. 1976) (the legislature is presumed to have made an informed decision). Presumably having had the knowledge of the statutory schemes of other jurisdictions and the Model Penal Code from whence most of the statutory definitions of § 13A-8-1 were derived, had the legislature so desired, it could have taken full advantage of a broader definition of "property." However, it did not do so. "Thus appears a clear legislative purpose to depart from the parent act[s]," Ivey v. Railway Fuel Co.,218 Ala. 407, 409, 118 So. 583 (1928), which explicitly included real property. In other words, the logical conclusion is that, had the legislature intended to extend the provisions of the theft statutes to include real estate, it would have so provided.
These same principles also operate to support the presumption, arising from the legislature's failure to change Alabama's then-existing law on the subject in the face of its knowledge of that law, that the legislature did not intend to alter the law.
 "Although it may be presumed that by enacting a statute the legislature intended some change in the existing law, it is also presumed that the legislature did not intend to overthrow or depart from established principles of law, or, beyond what it explicitly declares either expressly or by necessary implication, to make any alteration in the existing law."
82 C.J.S. Statutes § 316 at p. 545 (1953) (footnotes omitted). As we have noted, the general false pretense statute, § 13-3-90, operated to protect only "any money or other personal property." See also the commentary to §§ 13A-8-2 through13A-8-5, at p. 427, under the heading "False Pretenses" for a list of other former statutes proscribing *Page 907 
false pretenses, none of which protected real property. In regard to the offense of larceny, "[a]t common law, the subject of larceny must have been the personal goods of another." Commentary to §§ 13A-8-2 through 13A-8-5, p. 424. See alsoParker v. State, 352 So.2d 1386, 1390 (Ala.Cr.App. 1977), cert.denied, 352 So.2d 1391 (Ala. 1977) (real property cannot be the subject of larceny). See also the commentary to §§ 13A-8-2
through 13A-8-5, under the heading "Larceny" for a list of former statutes proscribing larceny, none of which protected real property. Finally, in regard to embezzlement, see commentary under the heading "Embezzlement" for a list of former statutes proscribing embezzlement, none of which protected real property. We presume that in enacting § 13A-8-1, the legislature, by not explicitly including real property in the definition of "property," intended that that aspect of the then-existing law not be changed.
From the presumption that the legislature was aware of the law contained in the other statutory sources it relied on and of the existing Alabama law when it enacted § 13A-8-1, it follows that we cannot agree with the observation in the commentary to §§ 13A-8-2 through 13A-8-5 that "Article 1 of Chapter 8 [which covers theft and related offenses] takes no position on the question" of whether a theft by the transfer of real property is theft under the Code. (Although the official comments are a valuable aid in statutory construction, they have not been enacted by the legislature and are not necessarily representative of legislative intent. Simmons v.Clemco Industries, 368 So.2d 509, 514 (Ala. 1979) (stated in regard to the official comments to the UCC). See also n. 2,supra.) By remaining silent on the question in the face of its presumed knowledge, the legislature took a position. "A statute often speaks as plainly by inference as in any other manner, and it is a general rule that that which is clearly implied from the express terms of a statute is as much a part thereof, and is as effectual as that which is expressed." Weill v. Stateex rel. Gaillard, 250 Ala. 328, 334, 34 So.2d 132 (1948). See,e.g., Paige v. Bartlett, 101 Ala. 193, 13 So. 768 (1893) (in an act forming a new county out of portions of old ones, a provision for the transfer of suits pending against defendants from the courts of the old counties into those of the new, without referring to the administration of estates pending in the former, is to be construed as an expression of legislative intent that such administrations should not be removable). Seealso In re Haas, 48 F.3d at 1156 ("[w]here Congress knows how to say something but chooses not to, its silence is controlling"); 82 C.J.S. supra § 316 at p. 547-48 ("presumptions are indulged against . . . uncertainty, or inadvertent omissions or oversights") (footnotes omitted).
To further construe the statutory definition of "property," we turn to the specific language that the legislature did use. The language of the entire statute under review must be read together and the determination of any ambiguity must be made on the basis of the entire statute. Just as statutes dealing with the same subject are read in pari materia, parts of the same statute are to be read in pari materia and each part is entitled to equal weight. Darks Dairy, Inc. v. Alabama DairyCommission, 367 So.2d 1378, 1381 (Ala. 1979). We must construe the meaning of the language highlighted below to determine if it encompasses real property:
 "Any money, tangible or intangible personal property, property (whether real or personal) the location of which can be changed (including things growing on, affixed to or found in land and documents, although the rights represented hereby have no physical location), contract right, chose-in-action, interest in a claim to wealth, credit or any other article or thing of value of any kind."
The construction of this phrase is governed by the doctrine of ejusdem generis, which "is a general principle of statutory construction under which general words, following the enumeration of particular classes of persons or things, are construed to apply only to persons or things of the same general nature or class as those specifically enumerated."Lambert v. Wilcox County Comm'n, 623 So.2d 727, 731 (Ala. 1993).
 "The doctrine of ejusdem generis is an attempt to reconcile an incompatibility between specific and general words so that all words in a statute and other legal instruments *Page 908 
can be given effect, all parts of a statute can be construed together and no words will be superfluous. If the general words are given their full and natural meaning, they would include the objects designated by the specific words, making the latter superfluous. If, on the other hand, the series of specific words is given its full and natural meaning, the general words are partially redundant. The rule 'accomplishes the purpose of giving effect to both the particular and the general words, by treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words.'
 "The resolution of this conflict by allowing the specific words to identify the class and by restricting the meaning of general words to things within the class is justified on the ground that had the legislature intended the general words to be used in their unrestricted sense, it would have made no mention of the particular words.
 "The doctrine of ejusdem generis has been said to be 'especially applicable to penal statutes.' "
2A Singer, supra, § 47.17 (footnotes omitted).
This doctrine was applied in Dix v. State, 8 Ala. App. 338,341-42, 62 So. 1007 (1913), where the court reviewed a penal statute forbidding purchase by junk dealers of "any iron, brass, brasses, lead, lead pipes, locks, bath tubs or other material or fixtures pertaining to a house." Acts 1911, p. 11. The court observed,
 "The particular specified acts prohibited and made an offense are followed by the more comprehensive generic terms, and these generic terms are immediately preceded by and connected with the things particularly specified by the words 'or other.' The generic terms used this way in such a connection include other acts or things of the same kind or within the same class . . . ."
8 Ala. App. at 342, 62 So. at 1008. See also, e.g., GilfordPartners v. Pizitz, 630 So.2d 404, 406-07 (Ala. 1993), cert.denied, 512 U.S. 1204, 114 S.Ct. 2672, 129 L.Ed.2d 808 (1994);Lambert v. Wilcox County Comm'n (the Wilcox County Board of Education is not included in the definition of "business" found in § 36-25-1(2): "[a]ny corporation, partnership, proprietorship, firm, enterprise, franchise, association, organization, self-employed individual and any other legal entity").
For this principle of statutory construction to be applicable, the following conditions must exist:
 "(1) the statute contains an enumeration by specific words; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration, usually following it; and (5) there is not clearly manifested an intent that the general term be given a broader meaning that the doctrine requires."
2A Singer, supra, § 47.18. We find that these conditions are satisfied, and the suggested class is movable property (as recognized in the commentary to §§ 13A-8-2 through 13A-8-5). Moreover, we cannot find that "on consideration of the context and whole law on the subject, and the purposes sought to be effected, it is apparent that the Legislature intended the general words to go beyond the class specifically designated."Moore v. City of Mobile, 248 Ala. 436, 28 So.2d 203, 206
(1946).
Thus, under the doctrine of ejusdem generis, the general words "or any other article or thing of value of any kind" do not broaden the definition to include real property. Rather, they refer only to property that is movable. See also Black'sLaw Dictionary (6th ed. 1990), which states, in regard to the use of the word "any," "Its generality may be restricted by the context; thus, . . . the words 'any other' following the enumeration of particular classes are to be read as 'other such like,' and include only others of like kind or character."; 82 C.J.S. supra § 332 at p. 662, which states that the doctrine ofejusdem generis "finds application and has frequently been applied where such terms as 'other,' 'any other,' . . . or 'other thing' follow an enumeration of particular classes, and where this occurs such words are to be read as 'other such like,' and are *Page 909 
construed to include only others of like kind or character." (footnotes omitted). Were we to construe the phrase here so broadly as to encompass real property, we would be rendering the following provision to be without any effect: "property (whether real or personal) the location of which can be changed." "There is a presumption that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used." 82 C.J.S. supra § 316 at p. 551-52. See also McDonald v. State,32 Ala. App. 606, 28 So.2d 805 (1947) (the legislature will not be presumed to have used language without any meaning or application). The court must give effect to each part of the statute, if possible, without doing violence to some other portion of the statute. Ex parte Darnell, 262 Ala. 71,76 So.2d 770 (1954).
Interestingly, in our survey of most other states' statutes relating to theft and theft-related offenses, we have found only one state's definition of "property" that mirrors Alabama's: North Dakota. See § 12.1-23-10.7 of the North Dakota Cent. Code (1985). The first sentence of that statute reads almost identically to Alabama's definition at § 13A-8-1(10):
 " 'Property' means any money, tangible or intangible personal property, property (whether real or personal) the location of which can be changed (including things growing on, affixed to, or found in land and documents although the rights represented thereby have no physical location), contract right, chose-in-action, interest in or claim to wealth, credit, or any other article or thing of value of any kind."
However, the North Dakota legislature added the following sentence to its definition: " 'Property' also means real property the location of which cannot be moved if the offense involves transfer or attempted transfer of an interest in the property."
We would be remiss in our resolution of the issue before us if we did not consider the applicability of § 1-1-1, which is contained in the chapter headed "Construction of Code and Statutes," and reads, in pertinent part, as follows:
 "The following words, whenever they appear in this Code, shall have the signification attached to them in this section unless otherwise apparent from the context:
". . . .
 "(6) PROPERTY. The word 'property' includes both real and personal property.
 "(7) REAL PROPERTY. The term real property includes lands, tenements and hereditaments.
 "(8) PERSONAL PROPERTY. The term 'personal property' includes money, goods, chattels, things in action and evidence of debt, deeds and conveyances."
(Emphasis added.)
From the foregoing discussion, it is apparent from the context of § 13A-8-1(10), as applied to the theft statutes, that the word "property" as used therein does not include real property. We adopt the court's position in State v.Klinkenberg, 76 Wn. 466, 136 P. 692, 694 (1915). There, the court construed the meaning of the general term "property," as used in that state's false pretenses statute (quoted in footnote 6, supra), in light of a statute defining various terms in the criminal code, providing that "[i]n construing the provisions of this act, save when otherwise plainly declared or clearly apparent from the context, the following rule shall be observed: . . . The word 'property' shall include both real and personal property." After reviewing the common law and statutory histories of the larceny and false pretenses statute, the court held, "The unqualified use of the word 'property' in describing what may be stolen or obtained by false pretenses from another . . . falls short of conveying the idea that land may be so obtained and criminal liability flow therefrom." 136 P. at 693. It rejected any operation of § 2303, finding it clearly apparent from the context of § 2601 that the term "property" did not include real property. Compare People v.Roland, 134 Cal.App. 675, 26 P.2d 517 (1933) (where the object of theft was designated as "personal property" and the object of false pretenses was designated as "real or personal property," but the object of embezzlement was termed only as "property" and where the definition of "property" in general statutes of *Page 910 
the penal code included "both real and personal property," the court held that real property could be the subject of embezzlement).
Had the legislature meant for "property" in the theft statutes to have the broad meaning of "property" set forth in § 1-1-1(6), there would have been no need to separately define the term in § 13A-8-1(10), especially by a definition much more detailed than "includes both real and personal property," §1-1-1(6). The legislature's failure simply to adopt its definition of § 1-1-1(6) indicates an intent to prescribe a different meaning. Cf. McWhorter v. State Bd. of Registration,etc., 359 So.2d 769, 773 (Ala. 1978) ("If different meanings had been intended, the Legislature would not have defined the two in identical phraseology."). "[A]ll subsequent legislation must be presumed to have been enacted in light of and with knowledge of th[is] general interpretive statute." 1A Singer,supra, § 27.03. Here, we think that there is clear legislative intent to substitute a different interpretation. We also note that the definition of "obtains," as used in relation to property, means "to bring about a transfer or purported transfer of a legally recognized interest in the property." §13A-8-1(6)(a). The broad term "transfer" can connote, among other things, a conveyance of the title of property. Black'sLaw Dictionary, supra, p. 1497. Both the words "title" and "conveyance" are terms indicating the foundation of ownership of personal as well as real property, although the words are probably used somewhat more frequently in connection with real property. See State v. Klinkenberg, 136 P. at 694 (stated in regard to the term "title"). However, based on the compelling construction of the statutes, as discussed above, we find that the definition's indirect implication of title and conveyance does not suggest that land be a subject of "obtains." See id.
Based on the foregoing, we must conclude that "property," as defined in § 13A-8-1(10), does not encompass real property. Unlike the overwhelming majority of other states, the legislature in Alabama has given no indication, by "the fair import of the terms" of the unified theft statutes or otherwise, that it intended to negate the traditional restrictions on the scope of larceny and other theft crimes. In other words, the "fair import" of the legislature's expression in § 13A-8-1(10) does not include real property. This court stands firm on its commitment to honor the separate functions of the legislature and the judiciary.
 "[S]ince the power to declare what conduct is subject to penal sanctions is legislative rather than judicial, it would risk judicial usurpation of the legislative function for a court to enforce a penalty where the legislature had not clearly and unequivocally prescribed it. In other words, before a person can be punished his case must be plainly and unmistakably within the statute sought to be applied."
3 Singer, supra, § 59.03 at p. 104-05 (emphasis added). While a broad definition of "property" might, in the eyes of some, promote justice, § 13A-1-6, and "proscribe conduct that unjustifiably and inexcusably causes or threatens substantial harm to individual and/or public interests," § 13A-1-3(1), the legislature has not so found. We cannot read more than the "fair import" of its terms convey and, by construction, create the crime of theft of real property when the legislature did not see fit to do so. "It is well-settled that, although there are occasions when a court must correct or ignore obvious inadvertence in order to give a law the effect which was plainly intended by the legislature, the judiciary cannot and should not, in a republican form of government, usurp the legislative function." Ex parte Holladay, 466 So.2d 956, 960
(Ala. 1985).
Accordingly, the judgment is reversed and remanded.
The foregoing opinion was prepared by Retired Appellate Judge John Patterson while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e).
REVERSED AND REMANDED.
All Judges concur.
[1] See Sheffield v. Andrews, 679 So.2d 1052 (Ala. 1996), for a history of the facts concerning the real estate transaction involved.
[2] Our consideration of the commentary is tempered by §1-1-14(b), Code of Alabama 1975, which states, "All historical citations and notes set out in this Code are given for the purpose of convenient reference, and do not constitute part of the law." As stated in Judge Bowen's concurring opinion inHawkins v. State, 549 So.2d 552, 560 (Ala.Cr.App. 1989),
 "[T]he official comments 'are not part of the section and have not been enacted by the legislature.' Minshew v. State, 542 So.2d 307 (Ala.Cr.App. 1988); cf. Simmons v. Clemco Industries, 368 So.2d 509, 514 (Ala. 1979) (official comments to UCC are not part of legislative enactment). The commentary does not override the form and meaning of the statutory language, when viewed in light of established principles of statutory construction. See generally, Sutherland Statutory Construction Section 45.07."
[3] Section 13-3-90 stated, "Any person who, by false pretense or token and with the intent to injure or defraud, obtains from another any money or other personal property shall, on conviction, be punished as if he had stolen it."
[4] Section 223.2, which proscribes theft by unlawful taking or disposition, states:
 "(1) Movable Property. A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof.
 "(2) Immovable Property. A person is guilty of theft if he unlawfully transfers immovable property of another or any interest therein with purpose to benefit himself or another not entitled thereto."
[10] "Ariz. § 13-1701(3); Colo. § 18-1-901(r) (cf. People v. Parga,188 Colo. 413, 535 P.2d 1127 (1975)); Conn. § 53a118(a)(1); Fla. § 812.011(1); Ga. § 26-401(a); Haw. § 708-800(15); Ill. ch. 38, § 15-1; Ind. § 35-17-5-13(15); Iowa § 702.14; Kan. § 21-3110(16); Ky. § 514.010(5); La. § 14:2(2); Me. tit. 17A, § 352(1); Mo. § 570.010(10); Mont. § 94-2-101(49); Neb. § 28-511(2); N.H. § 637:2(I); N.J. § 2C:20-1(g); N.M. § 40A-1-14(F); N.Y. § 155.00(1); N.D. § 12.1-23-10(6); Ohio § 2913.02, Committee Comment at 71, 72; Ore. § 164.005(5); Pa. tit. 18, § 3901; S.D. § 22-1-2(33); Tex. § 31.01(6)(A); Utah § 76-6-401(1); Wash. § 9A.04.110(21); Cal. (p) S.B. 27, § 12001(a); Mass. (p) ch. 266, § 1(j); Mich. (p) § 3201(i); Okla. (p) § 1-110(16); S.C. (p) § 17.2; W. Va. (p) § 61-7-1(9); U.S. (p) S. 1437, § 111 (1978).[5]
[5] By our additional survey, we have found the following additional codes that have adopted an expansive definition of "property": Idaho Code § 18-2402(8) (1987) ("anything of value [including] real estate"); Md. Ann. Code, art. 27, § 340(i)(1) (1957) ("anything of value, including but not limited to . . . [r]eal estate"); Wyo. Stat. § 6-1-104(a)(viii) ("anything of value whether tangible or intangible, real or personal, public or private").
See also Mich.Comp. Laws Ann. § 750.218 (West 1991) (proscribing false pretenses which causes a person to "grant, convey, assign, demise, lease or mortgage any land or interest in land"); Nev. Rev. Stat. Ann. § 205.0832(3) (Michie 1992) (proscribing obtaining real property by false pretenses); S.C. Code Ann. § 16-13-240. (Law.Co-op. 1985) (false pretenses covers real property).
[11] "Ala. § 13A-8-1(10); Ark. § 41-2201; Del. tit. 11, § 857(4) (property means anything of value except land, and includes things growing on, or affixed to, or found in land); Va. § 18.2-99 (things which savor of the realty and are at the time they are taken part of the freehold). Minnesota and Wisconsin punish theft of real estate only if it occurs through false pretenses. Minn. § 609.52; Wis. § 943.20."
[6] "A few modern statutes cover only severed real estate.Ala. Code 1975, § 13A-8-1; Ark. Stats. § 41-2201; Del. Code tit. 11, § 857; Va. Code 1950, § 18.2-99. Most, however, define the 'property' which may be the subject of theft as including all
real estate. Alaska Stat. 11.81.900; Ariz.Rev.Stat. § 13-1701; Colo.Rev.Stat. 18-1-901; Conn.Gen.Stat.Ann. § 53a-118; West's Fla.Stat.Ann. § 812.011; Ga. Code § 26-401; Hawaii Rev.Stat. § 708-800; Ill.-S.H.A. ch. 38, § 15-1; West's Ann. Ind. Code 35-17-5-13; Iowa Code Ann. § 702.14; Kan.Stat.Ann. 21-3110; Ky.Rev.Stat. 514.010; La.Stat.Ann.Rev.Stat. 14:2; Me.Rev.Stat.Ann. tit. 17-A, § 352; Vernon's Ann.Mo.Stat. § 570.010; Mont. Code Ann. 45-2-101; Neb.Rev.Stat. § 28-511; N.H.Rev. Stat.Ann. 637:2; N.J.Stat.Ann. 2C:20-1; N.M.Stat.Ann. 1978, § 30-1-14; N.Y. McKinney's Penal Law § 155.00: N.D. Cent. Code 12.1-23-10; Ohio Rev. Code § 2913.02; Or.Rev.Stat.164.005; Pa.Cons.Stat.Ann. tit. 18, § 3901; S.D.Cod. Laws22-1-2; Vernon's Tex. Code Ann., Penal Code § 31.02; Utah Code Ann. 1953, 76-6-401; West's Rev. Code Wash. Ann. 9A.04.110. (Compare Minn.Stat.Ann. § 609.52, defining 'property' to include documents and things growing on or affixed to land; and Wis.Stat.Ann. 943.29, covering theft of 'movable property,' which includes documents representing intangible rights and things growing on, affixed to or found in land.) This latter approach has been criticized because of 'the possibility of theft prosecutions in cases of holdover or eviction in a landlord-tenant relationship' and 'the problem * * * of distinguishing between theft and criminal trespass.' Model Penal Code § 223.2, Comment at 173-74 (1980). The Model Penal Code § 223.2 uses more cautious language so as to avoid such results, and a few states have followed that approach. Ky.Rev.Stat. 514.010; N.J.Stat.Ann. 2C:20-3; Pa.Cons.Stat.Ann. tit. 18, § 3921; Vernon's Tex. Code Ann., Pena Code § 31.01.
[8] "Or, even property which cannot be moved. See note 6 supra."
[16] "Thus in People v. Roland, 134 Cal.App. 675, 26 P.2d 517
(1933), where an agent refused to convey real estate to his principal on demand, falsely claiming to be the owner, it was held that [where 'property' was statutorily defined as including both real and personal property] real property, under the California statute, could be embezzled, so that the agent's conviction of embezzlement was affirmed.
"Compare Manning v. State, 175 Ga. 875, 166 S.E. 658 (1932), under a statute punishing the embezzlement of 'any [money, note, bill of exchange, bond, check, draft, order for the payment of money, cotton or other produce, or any other article or] thing of value'; the defendant, a trustee of real estate, fraudulently sold it to an innocent purchaser; his conviction of embezzlement was held reversed, for 'thing of value' does not include real property. . . .
"See also State v. Clark, 60 Ohio App. 367, 21 N.E.2d 484
(1938), noted at 6 Ohio St.L.J. 68 (1939), holding it not to be embezzlement, under a statute with the words 'every other thing of value,' fraudulently to convert real estate.
[17] "It has been pointed out that this obstacle to a larceny prosecution makes sense, for 'the immobility and relative indestructibility of real estate makes unlawful occupancy of land a relatively minor harm for which civil remedies supplemented by mild sanctions for trespass should be adequate.' Model Penal Code § 223.2, Comment at 172 (1980).
[18] "Model Penal Code § 223.2(2) therefore provides: 'A person is guilty of theft if he unlawfully transfers immovable property of another or any interest therein with purpose to benefit himself or another not entitled thereto.' "
[66] "Real estate not covered: State v. Eno, 131 Iowa 619,109 N.W. 119, 9 Ann.Cas. 856 (1906) (statute worded: money, goods 'or other property'); State v. Klinkenberg, 76 Wn. 466,136 P. 692 (1913) (statute provided: 'any property, money or any check').[6] Real estate is covered: State v. Toney, 81 Ohio St. 130,90 N.E. 142 (1909) (under statute which added 'anything of value' to former statute, which was limited to property subject to larceny).
"As is true in Model Penal Code § 223.0(6), most of the modern codes define 'property' for theft purposes broadly enough to cover real property obtained by fraud."
[6] Actually, the pertinent statute protected the taking of "any property" by false pretenses, not "property or money or any check." The statute, § 2601, Rem. Bal. Code, read:
 "Every person who, with intent to deprive or defraud the owner thereof (1) shall take, lead or drive away the property of another; or (2) shall obtain from the owner or another the possession of or title to any property by color or aid of any order for the payment or delivery of property or money or any check or draft, knowing that the maker or drawer of such order, check or draft was not authorized or entitled to make or draw the same, or by color or aid of any fraudulent or false representation, personation or pretense or by any false token or writing or by any trick, device, bunco game or fortune-telling, * * * steals such property and shall be guilty of larceny."
(Emphasis added.) *Page 911