Rel: February 6, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2025-2026

_____

## CR-2025-0430

_____

## M.C.

## v.

## State of Alabama

## Appeal from Lawrence Juvenile Court
## (JU-21-23.04)

KELLUM, Judge.

On April 29, 2025, the Lawrence Juvenile Court adjudicated M.C. delinquent on the underlying charge of making a terrorist threat in the second degree, see § 13A-10-242, Ala. Code 1975, and committed M.C. to

the Alabama Department of Youth Services.[1]  M.C. timely filed a postjudgment motion to alter, amend, or vacate the juvenile court's judgment, which was deemed denied on May 13, 2025.  See Rule 1(B), Ala. R. Juv. P.

On appeal, M.C. presents two issues for our review, but because of our disposition of this case, we address only one.  M.C. contends that the evidence was insufficient to sustain her adjudication because, she says, the State failed to prove that she threatened her teacher as the term "threaten" is defined in § 13A-10-240(2).

The evidence adduced at the delinquency hearing indicated that, in September 2024, the Alabama Fusion Center, a threat-assessment group run by the Alabama Law Enforcement Agency, received information from federal law enforcement about "a school shooting threat" made on a social-media application involving a high school in Lawrence County.  (R. 21.) Russell Graham, a captain with the Moulton Police Department, and Kris Long, a lieutenant with the Lawrence County Sheriff's Department,

---

[1]M.C. was originally charged in the delinquency petition with making a terrorist threat in the first degree, see § 13A-10-241, Ala. Code 1975, but the juvenile court granted the State's motion to amend the charge to the lesser offense of making a terrorist threat in the second degree, without objection by M.C.

were both notified of the threat. That notification included a copy of the following private digital-message exchange between two students, M.C. and D.H.:

> "[M.C.]: I'm gonna crash out
>
> "[D.H.]: Why?
>
> "[M.C.]: bc bru I didn't fucking delete the shit and she said u did
>
> "[M.C.]: i*
>
> "[M.C.]: and it's literally ai ofc it's gonna fuck up
>
> "[M.C.]: like bitch i'll delete yo ugly ahh
>
> "[D.H.]: Gonna shoot the school up
>
> "[M.C.]: HUH
>
> "[M.C.] shoot her first
>
> "[D.H.]: [skeleton emoji face]
>
> "[M.C.]: fuck that bitch"

(C. 30.) Testimony established that the person to whom M.C. referred in the above exchange was one of her teachers.

M.C. was subsequently detained and taken to the Lawrence County Sheriff's Office, where she was advised her of her juvenile <u>Miranda</u> rights. See <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and § 12-15-202,

Ala. Code 1975. M.C. agreed to waive her rights, signed a waiver-of-rights form, and gave a statement, which was recorded and introduced into evidence at the hearing as State's Exhibit 1.

In her statement, M.C. said that she and D.H. had been friends since the sixth grade and that they attended Lawrence High School together. M.C. said that she had sent a digital message to D.H. complaining about the teacher in her "career prep" class. D.H. responded by stating "[g]onna shoot the school up," and she then told D.H. to "shoot her first," referring to her teacher. M.C. did not think that anyone else saw her private exchange with D.H., although she admitted that, when she sent the message, she was sitting next to another student who may have seen it. M.C. said that her statement was a joke and that she did not mean it. She also said that D.H. "always jokes" about shooting up the school but that she did not take him seriously because he simply has a "dark" sense of humor. However, M.C. said that the last time D.H. had talked about shooting up the school was about a week before their message exchange and that she had told him to stop talking about it. In response, D.H. told her to shut up. M.C. said that, although she had complained to D.H. about her career-prep teacher and she would have

4

preferred virtual learning to having to go to school, she held no grudges against the school or any of her teachers.

It is well settled that the standard for determining the sufficiency of the evidence to sustain a delinquency adjudication is the same as the standard for determining the sufficiency of the evidence to sustain a conviction. See N.C. v. State, 309 So. 3d 629 (Ala. Crim. App. 2020), and the cases cited therein.

> "'"In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution."' Ballenger v. State, 720 So. 2d 1033, 1034 (Ala. Crim. App. 1998), quoting Faircloth v. State, 471 So. 2d 485, 488 (Ala. Crim. App. 1984), aff'd, 471 So. 2d 493 (Ala. 1985). '"The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt."' Nunn v. State, 697 So. 2d 497, 498 (Ala. Crim. App. 1997), quoting O'Neal v. State, 602 So. 2d 462, 464 (Ala. Crim. App. 1992). '"When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision."' Farrior v. State, 728 So. 2d 691, 696 (Ala. Crim. App. 1998), quoting Ward v. State, 557 So. 2d 848, 850 (Ala. Crim. App. 1990). 'The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.' Ex parte Bankston, 358 So. 2d 1040, 1042 (Ala. 1978)."

Gavin v. State, 891 So. 2d 907, 974 (Ala. Crim. App. 2003).

In 2023, before the alleged offense in this case, the legislature repealed the making-a-terrorist-threat statute, see former § 13A-10-15, Ala. Code 1975, and created two new offenses: making a terrorist threat in the first degree, see § 13A-10-241, Ala. Code 1975, and making a terrorist threat in the second degree, see § 13A-10-242, the offense at issue in this case. See Act No. 2023-493, Ala. Acts 2023. The legislature also added § 13A-10-240, Ala. Code 1975, which defines the term "threaten," as well as other terms not relevant to this appeal.

Section 13A-10-242(a) provides:

"A person commits the crime of making a terrorist threat in the second degree when he or she, based on an objective evaluation, credibly threatens to commit a crime of violence against a person or to damage any property by use of a bomb, explosive, weapon of mass destruction, firearm, deadly weapon, or other mechanism."

Section 13A-10-240(2) provides:

"(2) Threaten. A person threatens another if all of the following occur:

"a. The person intentionally and knowingly makes a statement verbally, in writing, by means of an electronic communication device, or by any other means to harm a person or property.

"b. The statement is communicated to another person.

"c. Under the circumstances, the threatened harm is credible and imminent.

"d. The statement, on its face and under the circumstances in which it is made, is so unequivocal, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat.

"e. The statement causes the person to reasonably be in sustained fear for his or her own safety or for the object of the threat."

M.C. contends that the State failed to prove that her statement "shoot her first" satisfied the requirement in subsection e. that it cause "the person" to reasonably be in sustained fear for his or her own safety or for the safety of the object of the threat. She argues, among other things, that her statement did not cause D.H. to fear for his safety or for the safety of her teacher. Although not directly addressed by M.C. in her brief, implicit in M.C.'s argument is the assumption that "the person" referred to in subsection e. is the person to whom the threat is communicated.[2] The State also does not directly address the question of

_____

[2]M.C. covers her bases, however, also arguing that the State failed to prove that her statement caused her teacher or anyone else to be in fear. Specifically, she argues that there was no evidence indicating that

who "the person" referred to in subsection e. is, but its argument, see note 2, supra, assumes that "the person" is the person threatened. To address M.C.'s argument, we must first determine who "the person" referred to in subsection e. is.

"'The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature <u>as manifested in the language of the statute</u>.'" <u>State v. Adams</u>, 91 So. 3d 724, 735 (Ala. Crim. App. 2010) (quoting <u>Ex parte State Dep't of Revenue</u>, 683 So. 2d 980, 983 (Ala. 1996)). "'[A]lthough penal statutes are to be strictly construed, courts

---

she "acted in reckless disregard that her statement would be seen by anyone else, let alone her teacher." (M.C.'s brief, pp. 28-29.) In response to this argument, the State asserts that "[t]he fact that M.C. sent a text expressing her desire for D.H. to shoot her teacher during a school shooting in her classroom next to a fellow student -- who could have easily seen the message and relayed it to the teacher being targeted -- demonstrates M.C.'s reckless disregard for the possibility that the threat would reach her teacher." (State's brief, pp. 35-36.) In making these arguments, both parties rely on <u>Smoak v. State</u>, 186 So. 3d 493 (Ala. Crim. App. 2015) -- a case they both acknowledge was decided under former § 13A-10-15, Ala. Code 1975 -- in which this Court recognized that, under former § 13A-10-15, the offense of making a terrorist threat could be committed either intentionally or recklessly, see former § 13A-10-15(a)(1), and that "a person acts recklessly in making a terrorist threat when a defendant is aware of but disregards the risk that that his or her communication will cause terror or disrupt school activities." 186 So. 3d at 500. Because of our disposition of this case, we need not address whether <u>Smoak</u> survived the repeal of the statute on which it was based.

are not required to abandon common sense. Absent any indication to the contrary, the words must be given their ordinary and normal meaning.'" Ex parte Ankrom, 152 So. 3d 397, 409 (Ala. 2013) (quoting Walker v. State, 428 So. 2d 139, 141 (Ala. Crim. App. 1982)). "'"There is a presumption that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used."'" State v. Adams, 91 So. 3d 724, 736 (Ala. Crim. App. 2010) (quoting Sheffield v. State, 708 So. 2d 899, 909 (Ala. Crim. App. 1997), quoting in turn 82 C.J.S. Statutes § 316 at pp. 551-52 (1953)). Moreover, "'[b]ecause the meaning of statutory language depends on context, a statute is to be read as a whole ... [and s]ubsections of a statute are in pari materia.'" Mitchell v. State, 316 So. 3d 242, 247 (Ala. Crim. App. 2019) (quoting Ex parte Jackson, 614 So. 2d 405, 406 (Ala. 1993)).

The definition of "threaten" in § 13A-10-242(2) specifically refers to three people. Subsection a. refers to the person who "makes [the] statement." Subsection b. refers to the person to whom the statement "is communicated." And subsection d. refers to "the person threatened." We note that, although "the person threatened" in subsection d. and the

person to whom the statement "is communicated" in subsection b. may be the same person, nothing in the plain language of § 13A-10-242 or § 13A-10-240(2) requires that they be the same person, and, in this case, the two are different.

Subsection e. simply refers to "the person," without specifically identifying that person. Obviously, "the person" in subsection e. would not be the person making the statement, because it would be illogical to require the person who makes a threat to be in fear for his or her own safety or for the safety of the object of his or her own threat. Moreover, the legislature knew how to identify the person threatened in plain terms as it did so specifically in subsection d. If the legislature intended "the person" in subsection e. to be limited to the person threatened, it would have said so plainly, but it did not.

The only other person specifically referred to in § 13A-10-240(2) is the person to whom the statement is communicated. As already noted, depending on the circumstances of a case, the person to whom the statement is communicated may or may not be the same as the person threatened, but it makes sense that the legislature intended "the person" in subsection e. to be the person to whom the statement is communicated

so as to encompass those circumstances, like in this case, in which the person threatened is unaware of the threat. We find support for this conclusion in the fact that subsection e. requires that the statement cause "the person" to fear either for his or her own safety or for the safety of "the object of the threat." The phrase "object of the threat" is broad enough to encompass either person or property. Therefore, we conclude that "the person" in subsection e. is the person to whom the threat is communicated and that, to satisfy subsection e., the State must prove that the statement caused the person to whom the threat was communicated to fear either for his or her safety or for the safety of the person (or property) threatened.

Having determined that "the person" referred to in subsection e. is the person to whom the statement is communicated, we agree with M.C. that there was insufficient evidence indicating that her statement "shoot her first" caused D.H. to fear for his own safety or for the safety of M.C.'s teacher. In her statement, M.C. said that D.H. often talked about shooting up the school, to the point that she was uncomfortable enough to ask him to stop. When M.C. then complained to D.H. about her teacher, D.H. responded by stating, "[g]onna shoot the school up," and

11

M.C., in turn, told D.H. to "shoot her first," referring to her teacher. Given that D.H. was the one who was "[g]onna shoot the school up," it is not reasonable that he would fear for his own safety, much less for the safety of the occupants of the school he planned to "shoot up," including M.C.'s teacher.

Because all five requirements in 13A-10-240(2) must be satisfied for a statement to constitute a threat for purposes of 13A-10-242, and because there was insufficient evidence to establish that M.C.'s statement satisfied the requirement in 13-10-240(2)e., the evidence was insufficient to sustain M.C.'s adjudication for making a terrorist threat in the second degree.

Based on the foregoing, the judgment of the juvenile court is reversed and a judgment rendered in M.C.'s favor.

REVERSED AND JUDGMENT RENDERED.

Windom, P.J., and Cole and Anderson, JJ., concur. Minor, J., concurs in the result.