762 So.2d 366 (2000)
MORGAN BUILDING AND SPAS, INC.
v.
Joseph E. GILLETT.
2980788.
Court of Civil Appeals of Alabama.
March 10, 2000.
*367 Patrick H. Sims and Ian D. Rosenthal of Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, for appellant.
Marcus E. McCrory, Mobile, for appellee.
PER CURIAM.
Joseph E. Gillett sued Morgan Building and Spas, Inc. (hereinafter "Morgan"), alleging numerous counts of fraud, breach of warranty, and breach of both the Alabama Deceptive Trade Practices Act and the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act. The claims all related to his purchase of a recreational camper from Morgan. We note that although the manufacturer of the camper was also initially named as a party to the action, the manufacturer was never served with process. The record indicates that the manufacturer went through bankruptcy proceedings and is no longer in business.
At trial, Gillett dismissed his claims based on the Deceptive Trade Practices Act. After Gillett presented evidence in support of his case and rested, Morgan moved for a judgment as a matter of law on all claims. The trial court granted Morgan's motion for a judgment as a matter of law on Gillett's claims of intentional fraud and breach of an express warranty. At the close of the evidence, Morgan again moved for a judgment as a matter of law as to the remaining claims; the trial court denied that motion.
The jury returned a verdict in favor of Gillett, awarding him $12,000 in compensatory damages and $10,000 in punitive damages. Morgan filed a renewed motion for a judgment as a matter of law. The trial court denied that motion. Morgan appealed.
*368 On appeal, Morgan does not challenge the jury's findings on the factual issues. Rather, Morgan appeals as to several legal issues determined by the trial court. Therefore, because this appeal concerns only questions of law, there is no presumption of correctness in favor of the trial court's judgment; this court's review of legal issues is de novo. Allstate Ins. Co. v. Skelton, 675 So.2d 377 (Ala.1996); Stewart v. Goodyear Tire & Rubber Co., 686 So.2d 1225 (Ala.Civ.App.1996).
The record indicates that on December 15, 1995, Gillett purchased a camper from Morgan for $7,219.12. Gillett testified that he purchased the camper so that he and his family could go camping together. Gillett testified that he decided to purchase the camper from Morgan after a salesman assured him that Morgan performed all warranty work and that if he had any problems with the camper, Morgan would remedy those problems.
The camper Gillett purchased folds down for towing behind a vehicle. In order to use the camper, the top of the camper must be raised by turning a crank. The beds fold out from the ends of the camper.
On December 15, 1995, after he had towed the camper to his home, Gillett set up the trailer. He noticed that the bed rails were bent and that it was very difficult to pull the beds into their proper position. On December 17, 1995, Gillett telephoned Morgan about the problem with the bed rails; Gillett informed a secretary at Morgan that he had planned to use the camper immediately on a two-week vacation to Idaho. The secretary told Gillett to proceed with his vacation and to take the camper to Morgan for the needed repairs when he returned.
Gillett testified that he used the camper during his vacation and that he experienced difficulties in setting up and taking down the camper because of the bent bed rails. Gillett took the camper to Morgan for repairs in mid-January 1996. At that time, Gillett informed Morgan of at least one other minor problem with the camper that also needed to be repaired. Gillett testified that he was told the repairs would take one week to complete. However, it was not until February 8, 1996, that he received a call from Brad, the service manager at Morgan, who informed him that the camper had been repaired.
Gillett immediately went to Morgan's place of business to pick up the camper, but when he arrived Brad told him that although some repairs had been made the bent bed rails had not been repaired. Gillett testified that Brad told him to take the camper home with him and that he would order the parts necessary to repair the bed rails and that he would travel to Gillett's home to perform the repairs.
Gillett testified that he telephoned Morgan several times during the months between the time he took the camper home and the date that Brad finally contacted him, in mid-May 1996. Brad told Gillett that the parts needed to repair the camper were on back-order and that they would arrive within one week. Gillett told Brad that a crank on the camper had broken and that, because of the broken crank, it was almost impossible to attach the camper to a vehicle. Gillett testified that Brad said that he would travel to Gillett's home in one week to fix both the bed rails and the crank.
Brad never went to Gillett's home to fix the camper. Gillett testified that in mid-June 1996, approximately one month after his mid-May 1996 conversation with Brad, he telephoned Morgan and asked to speak to a manager about obtaining a refund of the money he had paid for the camper. Gillett testified that the day after he called and asked to speak to a manager, Brad called and spoke with Gillett's wife. Brad told Gillett's wife that the parts to repair the camper were in and that Brad could fix the camper.
Gillett testified that he telephoned and left several messages for a manager to contact him, but that no manager from *369 Morgan ever returned his calls. On June 24, 1996, Gillett took the camper back to Morgan's place of business. Gillett spoke with a manager named Wayne. Gillett testified that he told Wayne that he wanted a refund of the money he had paid for the camper. Gillett testified that Wayne told him he could not refund his money but that he promised to have the camper fixed within two days.
The camper was not repaired within two days. Gillett telephoned Morgan a week after his conversation with Wayne and spoke with Brad, who informed him that the camper was still not repaired. Brad told Gillett that the camper would be repaired by the next day. Brad called over two weeks later and left a message with Gillett's wife, telling her that the camper was repaired and that Gillett could pick up the camper. Gillett testified that when he traveled to Morgan's place of business, "there was another service mechanic out there and he had a screwdriver and he said they were going to try to fix [the camper]." Gillett testified that Morgan never repaired the trailer.
Gillett's claim alleging reckless fraud, his breach-of-implied warranty claims, and his claim under the Magnuson-Moss Act were submitted to the jury. The trial court also charged the jury on the issues of revocation of acceptance and mental-anguish damages. The jury returned a verdict finding that Morgan had breached an implied warranty regarding the camper and awarding Gillett $2,000 as the amount by which that breach reduced the value of the camper. In addition, the jury also awarded Gillett $10,000 in other compensatory damages and $10,000 in punitive damages.
On appeal, Morgan first argues that the trial court erred in allowing the jury to consider Gillett's claim for punitive damages. At the close of the plaintiffs evidence, the trial court granted a judgment as a matter of law in favor of Morgan on Gillett's claim of intentional fraud. Morgan argues that none of the remaining claims that were submitted to the jury would support an award of punitive damages.
In its jury charge, the trial court twice told the jury it could award punitive damages if it determined that Gillett had presented clear and convincing evidence indicating that the alleged fraudulent statements were "committed so recklessly that [they] would amount to maliciousness, oppressiveness, or grossness, and [were] made with knowledge of [their] falseness." The charge given was substantially similar to that suggested in Alabama Pattern Jury Instructions: Civil ("A.P.J.I."), Instruction 18.06, Alternate B (2d ed.1993). Morgan objected to that charge and argued, as it does on appeal, that the charge given was applicable only to those actions where the plaintiffs rights accrued before June 11, 1987.
A.P.J.I. 18.06 reads as follows:
"FRAUD AND DECEIT COMPENSATORY DAMAGES
"[ALTERNATE A]
"The plaintiff in this case is claiming damages from the defendant(s) for an alleged fraud. If you are reasonably satisfied from the evidence that the defendant(s)(was) (were) guilty of a fraud as claimed by the plaintiff and that the plaintiff was (injured) (damaged) thereby, then the plaintiff would be entitled to recover for such actual (damage) (injury) as you find from the evidence (he)(she) did suffer.
"[ALTERNATE B]
"In addition to actual damages, the law authorizes a jury to award (exemplary), (punitive), or (vindictive) damages in (fraud) (deceit) actions if it is shown to the reasonable satisfaction of the jury by the evidence that the (fraud) (deceit) was malicious, oppressive, or gross, and made with knowledge of its falseness (or *370 recklessly done as to amount to the same thing) and committed with the intent to deprive the plaintiff of property or legal rights or otherwise caused injury."
However, the notes on the use of this instruction that follow it state that "[A]lternate A is for all cases where the rights accrued after June 11, 1987. For such cases, a separate charge at APJI 18.09 addresses the subject of punitive damages. Alternate B is for all cases where the rights accrued before June 11, 1987." Notes on Use, A.P.J.I. 18.06 (emphasis added).
On June 11, 1987, the Alabama legislature passed Act No. 87-185, Ala. Acts 1987, which modified the prior law regarding punitive damages. Act No. 87-185 is now codified at §§ 6-11-20 through 6-11-30, Ala.Code 1975. The provisions of Act No. 87-185 became effective immediately upon the Governor's approval of the Act on June 11, 1987. § 6-11-30, Ala.Code 1975 (Act No. 87-185, § 14). The Act, as codified, provides the following with regard to punitive damages:
"Punitive damages may not be awarded in any civil action, except civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. Nothing contained in this article is to be construed as creating any claim for punitive damages which is not now present under the law of the State of Alabama."
§ 6-11-20(a), (emphasis added). For the purposes of § 6-11-20, "fraud" is defined as:
"An intentional misrepresentation, deceit, or concealment of a material fact that the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury."
§ 6-11-20(b)(1), Ala.Code 1975, (emphasis added).
A.P.J.I. 18.09, which is referenced in the Notes on Use following A.P.J.I. 18.06, governing the award of compensatory damages in fraud cases, reflects the change in the law, effective June 11, 1987, regarding an award of punitive damages. That jury instruction reads in part:
"FRAUD AND DECEIT PUNITIVE DAMAGES
"In addition to actual damages, the law authorizes a jury to award punitive or exemplary damages in (fraud) (deceit) actions if it is shown by clear and convincing evidence that the (fraud) (deceit) was an intentional misrepresentation, deceit or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury."
A.P.J.I. 18.09.
However, the trial court charged the jury that in order to award punitive damages, it must find that Gillett presented clear and convincing evidence, see § 6-11-20(a), Ala.Code 1975, indicating that Morgan's representations were made so recklessly as to amount to "maliciousness, oppressiveness, or grossness, and made with knowledge of its falseness."
We must agree with Morgan that the trial court improperly instructed the jury on the issue of punitive damages. In actions (except wrongful-death actions) involving rights that accrue after June 11, 1987, punitive damages may be awarded only where the plaintiff presents clear and convincing evidence indicating that the defendant acted consciously or deliberately. §§ 6-11-20(a) and 6-11-30, Ala.Code 1975. *371 The trial court determined that Gillett had presented no evidence indicating that Morgan's conduct was intentional or deliberate, and it granted Morgan's motion for a judgment as a matter of law on Gillett's claim of intentional fraud. Therefore, the only claim under which Gillett might have recovered punitive damages was not submitted to the jury. Because Gillett's rights accrued after the June 11, 1987, the effective date of § 6-11-20 et seq., Ala. Code 1975, the trial court erred in charging the jury that it could award punitive damages on the basis of reckless conduct. We must therefore reverse that portion of the judgment awarding punitive damages.
Morgan next argues that the trial court erred in denying its motion for a judgment as a matter of law on Gillett's claim alleging breach of an implied warranty because, it argues, the sales contract between the parties excluded implied warranties.
Immediately below Gillett's signature on the purchase contract is the following language in bold print and capital letters: "LOOK ON THE BACK. THE TERMS THERE ARE ALSO PART OF OUR AGREEMENT." The back of the contract contains a list of other terms and conditions of the sale. In print larger and bolder than that found in the rest of the document, the contract states:
"NO AGENT, EMPLOYEE OR OTHER REPRESENTATIVE OF MORGAN HAS ANY AUTHORITY TO BIND MORGAN TO ANY AFFIRMATION. MORGAN MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND MORGAN SHALL NOT BE RESPONSIBLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES INCURRED BY [THE] PURCHASER (ME) AS A RESULT OF THIS AGREEMENT. I UNDERSTAND THAT (YOU) MAKE NO WARRANTIES WHATSOEVER REGARDING THE PRODUCT OR ANY APPLIANCE OR COMPONENT THEREON, EXCEPT AS MAY BE REQUIRED UNDER APPLICABLE STATE LAW."
(Emphasis added.)
Section 7-2-316(2), Ala.Code 1975, allows a seller to exclude the implied warranties of merchantability and fitness by including in the contract a "conspicuous" written statement disclaiming those warranties. A clause is conspicuous "when it is so written that a reasonable person against whom it is to operate ought to have noticed it." § 7-1-201(10), Ala.Code 1975. That section states that language in a form contract is considered conspicuous when the print is larger or is in a contrasting type or color than that contained in the rest of the document, and that whether a clause is conspicuous is a question to be determined by the trial court. Id.
In Fleming Farms v. Dixie Ag Supply, Inc., 631 So.2d 922 (Ala.1994), the court affirmed a summary judgment in favor of the defendant. The court held that the term "WARRANTY DISCLAIMER," which appeared in capital letters and bold print that was larger than that contained in the rest of the document, was conspicuous and that, therefore, the warranty disclaimer was effective.
Similarly, in Fincher v. Robinson Brothers Lincoln-Mercury, Inc., 583 So.2d 256 (Ala.1991), the court affirmed a summary judgment where the contract at issue contained a warranty-disclaimer provision similar to the one contained in the purchase contract between Gillett and Morgan. The warranty-disclaimer provision was printed in a different type and color than the print contained in the rest of the document. The court held that the summary judgment was proper because the disclaimer satisfied the requirements of § 7-1-201(10), Ala.Code 1975.
In Money v. Willings Detroit Diesel, Inc., 551 So.2d 926 (Ala.1989), the court affirmed a summary judgment in favor of *372 the defendant. The contract in that case contained a warranty-disclaimer provision similar to that contained in the contract at issue in this case; the provision was printed in all capital letters. The court held that the trial court correctly determined that the provision was conspicuous and that it effectively disclaimed the implied warranties.
Whether a clause or provision of a contract is conspicuous is a question for the court. § 7-1-201(10), Ala.Code 1975. The warranty-disclaimer provision contained in the contract between Gillett and Morgan was printed in all capital letters, in bold print, and in a print that was larger than the print used in the body of the contract. Therefore, we conclude that the warranty-disclaimer provision was "conspicuous," as that term is defined in § 7-1-201(10), Ala. Code 1975. The trial court erred in denying Morgan's motion for a judgment as a matter of law on the claims alleging breach of an implied warranty and erred in submitting those claims to the jury.
Last, Morgan argues that a provision in the sales contract between Gillett and Morgan limits the total damages available in this case to the amount of the reduction in the value of the camper caused by the lack of repairs. The relevant provision in the contract states:
"28. LIMITATION OF DAMAGES. If the manufacturer(s)' warranty is limited to repair and replacement and such warranty fails because of an attempt at repairs which are not completed within a reasonable time or the manufacturer(s) has (have) gone out of business, I agree that if I am entitled to any damages at all against you, my damages are limited to the lesser of either the cost of needed repairs or reduction in the market value of the unit caused by the lack of repairs. In any case you will not be required to pay me any incidental or consequential damages. ..."
(Emphasis added.) Morgan argues that, because of the language in the limitation-of-damages provision, Gillett is entitled to recover only $2,000, the amount the jury determined represented the reduction in the value of the camper; Morgan argues that Gillett is not entitled to recover the remaining $10,000 in compensatory damages awarded by the jury.
Section 7-2-719, Ala.Code 1975, part of Alabama's enactment of the Uniform Commercial Code, provides that the parties to an agreement may provide for remedies "in addition to or in substitution for" those provided for in the U.C.C., including limiting the buyer's remedies to the return of the goods and repayment of the purchase price or to the repair and replacement of the nonconforming goods. See § 7-2-719(1)(a), Ala.Code 1975.
"Where the parties have set out in a written contract the warranties agreed upon and have provided a remedy in case of a breach of warranty, the remedy thus provided is exclusive, see Ala. Code 1975, § 7-2-719(2), but where no remedy for breach is provided by the contract, the non-breaching party may elect the remedy he wishes to pursue under general contract law, see 17A Am. Jur.2d Contracts § 725 (1991)."
McDonald v. Schwartz, 706 So.2d 1230, 1232 (Ala.Civ.App.1997). The sales contract between Gillett and Morgan sets forth an exclusive remedy: in the event of a breach, Gillett, the purchaser, is entitled to the lesser of (1) the cost of the needed repairs or (2) the reduction in the value of the camper caused by the lack of repairs.
We note that in his brief on appeal, Gillett argues that this court should affirm the jury's award of compensatory damages and the trial court's denial of Morgan's motion for a judgment as a matter of law on the implied-warranty claims on the basis that the express limited warranty set forth in the limitation-of-damages provision "fail[ed] of its essential purpose." See § 7-2-719(2), Ala.Code 1975. Assuming that this argument, as it relates to the implied warranty claims, is well-taken, we must still reverse on both issues.
*373 "[I]f a jury finds that the limited warranty has `failed of its essential purpose,' it may then award damages." Volkswagen of America, Inc. v. Harrell, 431 So.2d 156, 163 (Ala.1983). In this case, however, the trial judge refused to charge the jury on the issue of the failure of an essential purpose of a warranty and Gillett did not object to that refusal. The issue of a failure of the essential purpose of a limited warranty was not presented to or considered by the jury. Thus, the jury's award of damages was not based on the theory advanced by Gillett on appeal.
We note that consequential damages may not be limited where such a limitation would be unconscionable. § 7-2-719(3), Ala.Code 1975.
It is clear that the jury found Morgan to be at fault, and that finding is fully supported by the evidence in the record. However, in light of the instructions given to the jury by the trial court, the entire award of damages is flawed. Thus, we must reverse the judgment and remand the cause for a new trial.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY and THOMPSON, JJ., concur in part and dissent in part.
THOMPSON, Judge, concurring in part and dissenting in part.
The parties to a contract may specify a remedy in case of a breach, and if they do that remedy is exclusive. § 7-2-719, Ala. Code 1975; McDonald v. Schwartz, 706 So.2d 1230 (Ala.Civ.App.1997). The sales contract between Gillett and Morgan sets forth an exclusive remedy: in the event of a breach, Gillett, the purchaser, is entitled to the lesser of the cost of the needed repairs or the reduction in the value of the camper. The main opinion states that "consequential damages may not be limited where such a limitation would be unconscionable." 762 So.2d at 373. However, Gillett made no argument, either at trial or in his brief on appeal, that the limitation-of-damages provision contained in the sales contract was unconscionable.
The jury specifically determined that the value of Gillett's camper had been reduced by $2,000. I believe the limitation-of-damages provision validly limits the damages in this case to the $2,000 in damages awarded by the jury for the reduction in the value of the camper. I dissent from that portion of the main opinion remanding this case for a new trial. I concur with that portion of the main opinion reversing the punitive-damages award and reversing the trial court's denial of Morgan's motion for a judgment as a matter of law on the claims alleging breach of an implied warranty.
CRAWLEY, J., concurs.