WELCH, Judge.
Joshua Simons was convicted of the Class C felony of cruelty to a dog or cat, a violation of § 13A-ll-241(a), Ala.Code 1975.[1] He was sentenced as a habitual felon having 16 prior felony convictions[2] to 20 years’ imprisonment.[3] Simons presents two issues for appellate review. He contends that he was denied his constitutional right to self-representation at his trial, and he contends that the application of the Habitual Felony Offender Act (“the HFOA”) to enhance his sentence beyond the statutoiy maximum for a Class C felony resulted in an illegal sentence, because, according to Simons, the HFOA has no application to the offense of first-degree cruelty to a dog or cat. See § 13A-11-241(a), Ala.Code 1975.
*19 i.
Simons contends that the trial court violated his right to self-representation by denying his request to serve as his own counsel. Simons asserts on appeal that he had an absolute right to represent himself at trial, and that “the failure of the trial court to afford him this right, and the failure of the trial court to enter into a meaningful colloquy with him in which it advised him of his rights and assessed his ability to self-represent, robbed the trial court of jurisdiction and requires this court to reverse the verdict.” (Simons’s brief, at p. 16.)
“[This Court] review[s] a circuit court’s decision to deny a defendant the right of self-representation for an abuse of discretion. See Ford v. State, 515 So.2d 34, 43 (Ala.Crim.App.1986) (‘A trial court’s decision following a Faretta [v. California, 422 U.S. 806 (1975),] hearing is reviewed for abuse of discretion.’). If we determine that a circuit court has abused its discretion in denying a defendant’s right of self-representation, that ‘denial is not amenable to “harmless error” analysis. The right is either respected or denied; its deprivation cannot be harmless.’ McKaskle v. Wiggins, 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). See also Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (recognizing that the erroneous denial of the right of self-representation at trial is structural error ‘subject to automatic reversal’). Cf. Cobb v. State, 155 So.3d 318, 323 (Ala.Crim.App.2014) (‘An invalid waiver of the right to counsel is a jurisdictional defect, and “[a] jurisdictional defect defies analysis by a harmless-error standard and is per se ground for reversal, requiring no consideration of whether the defendant was prejudiced as a result of the error.” Ash v. State, 843 So.2d 213, 219 (Ala.2002), overruled on other grounds, Ex parte Seymour, 946 So.2d 536 (Ala.2006), quoted in Powers v. State, 38 So.3d 764, 768-69 (Ala.Crim.App.2009).’).”
Kennedy v. State, 186 So.3d 507, 518 (Ala.Crim.App.2015).
Simons was arraigned on September 22, 2014. He was represented by his court-appointed counsel, Ronald Clark. On September 24, 2014, Clark filed a motion asking the trial court to order a mental evaluation for Simons. Among'various grounds presented in support of this motion was counsel’s assertion that on two occasions, September 10 and 15, 2014, Simons refused to see Clark when Clark went to the jail to talk with Simons about his case. On October 1, 2014, Simons filed a pro se motion asserting:
“I have a trial coming up in November in regards to a cruelty to animals case. As it stands I have dismissed my court appointed lawyer (Ronald Clark, Jr.), due to his incompetence and I do not want to have a lawyer but I would much rather exercise my right to plead’ my own case;”
(CR. 22.) On October 7, 2014, a hearing was conducted on Simons’s pretrial motions. The following transpired at the hearing regarding self-representation:
“[Simons:] What my intention in this situation is, I feel like personally, the only agenda on [Mr. Clark’s] behalf is to work a deal with the district attorney. End of story. It ain’t about concern for me. So I want to get rid of him and get another lawyer.
“THE COURT: Well, have you got some way to hire one?
“THE DEFENDANT: I know about five of them’s phone numbers. Can’t use the phone, though.
“THE COURT: Okay. Have you got any money to hire those people?
*20 “THE DEFENDANT: Urn-hum.
“THE COURT: Well, if you hire one, I’ll let [Mr. Clark] file a notice and I’ll release Mr. Clark. But at this point Mr. Clark is your lawyer. And one of his jobs is to seek some kind of a settlement. But, if you want to go to trial, Mr. Clark will announce trial right now. Isn’t that right, Mr. Clark?
“MR. CLARK: Yes, sir.”
(Supplemental Record, R. 3-4.)[4] A written order was issued denying Simons’s motion.
On November 2, 2014, counsel filed a motion for a continuance that was styled “Motion to Stay Prosecution.” (R. 33.) Counsel asserted the following in that motion: Simons refused to meet with counsel on September 10 and 15, 2014. On September 15, 2014, “[a] Chambers County Detention Facility Corrections Officer relayed to attorney that [Simons] emphatically stated that ‘He did not want to see his attorney.’ ” (R. 34.) Simons refused to speak with counsel at the September 22, 2014, arraignment. During a probation-revocation hearing also conducted on September 22, 2014, Simons stated to the court that “he wanted his attorney dismissed, did not want to talk to his attorney, and refused to acknowledge attorney’s presence.” (R. 34.) Simons had refused to assist counsel in preparing for the case and Simons had on October 2, 2014, filed a pro se motion stating that he had dismissed counsel based on counsel’s alleged incompetence and expressed his desire to plead his own case. Counsel asserted that he had been unable to adequately prepare for trial without any input from Simons.
On November 4, 2014, prior to the commencement of trial, counsel renewed the pretrial motion for a mental evaluation and the motion to release counsel from the case and asked for a ruling on the motion to stay the proceedings, which had been filed two days earlier. The hearing began with the trial court stating to Simons that “I think I got satisfied the last time you and I spoke.” (R. 4.) The trial court then asked Simons several questions to ascertain that Simons understood the proceedings and the role of each participant in the trial. The trial court then stated that the motion for a mental evaluation was denied. The trial court denied the motion for a continuance commenting that a continuance was unnecessary because there would be no mental evaluation and further commenting that as far as “the cooperation aspect of [the request for a continuance] ... that’s on [Simons.]” (R. 6.) No argument was presented as to and the trial court did not address the issue of self-representation or the removal of Clark as counsel.
Following the trial, the jury returned a guilty verdict. Simons was sentenced immediately following the verdict. When speaking with the trial court’s permission following the imposition of his sentence, Simons stated:
“I felt my lawyer done fairly decent. A few things that I was trying to ask him to do, and he didn’t want to do because he felt it was not in my best interest. Well, it still wasn’t in my best interest, because I’m not guilty of this matter. But I guess because of my statement about valuing human life or whatever. But, yeah that’s all I want to say, sir.”
(R. 82.)
On December 4, 2014, Clark filed a motion to withdraw from the case. Also on *21 December 4, 2014, Simons filed a pro se motion for a new trial. In his motion for a new trial, Simons asserted that he “did not file an affidavit for a court appointed lawyer but the court forced [him] to have one and did not give [him] a[n] option to hire [his] own attorney. [He] tried to release the lawyer and provide [his] own legal counsel and [he] was denied that option.” (OR. 68.) No ruling was entered on this motion.
On December 5, 2014, the trial court granted Clark’s motion to withdraw and appointed attorney W. Greg Ward to represent Simons on appeal.
“In Faretta v. California, 422 U.S. 806 (1976), the Supreme Court held that a defendant has a Sixth Amendment right to represent himself in a criminal case.” Tomlin v. State, 601 So.2d 124, 128 (Ala. 1991). The right to self representation does not attach until it is asserted “clearly and unequivocally.” See Faretta v. California, 422 U.S. 806, 96 S.Ct. 2526, 46 L.Ed.2d 562 (1975).
Here, Simons did not assert his right to self-representation “clearly and unequivocally.” The record discloses that counsel recounted Simons’s failure to cooperate, not as a ground for withdrawing, but as support for a motion seeking a mental evaluation. Moreover, recalcitrant conduct on the part of a defendant does not trigger a Faretta inquiry. However, Si-mons did file a motion asserting that he thought his counsel was incompetent and that, thus, he would prefer to represent himself. The trial court conducted a hearing on the motion. However, at the hearing, Simons told the trial court that he wanted to fire his court-appointed counsel and retain his own counsel with his own funds. The trial court acquiesced on the condition that retained counsel file a notice of appearance. Thus, when given the opportunity, Simons did not assert his right to waive counsel and to represent himself but, instead, clarified that he wanted to replace appointed counsel. Thus, absent a clear and unequivocal request for self-representation, no further action was required from the trial court. See Stano v. Dugger, 921 F.2d 1125, 1144 (11th Cir.1991)(“Once the right of self-representation has been asserted clearly and unequivocally, understandable to the trial court by the reasonable person standard, then and only then is that court, under Supreme Court and Eleventh Circuit case law, required to conduct the requisite inquiry to determine whether the criminal defendant’s decision to represent himself is knowing, intelligent and voluntary. Faretta, 422 U.S. at 835.”). Moreover, there was no ambiguity concerning Simons’s desire not to waive counsel, and appointed counsel was not dismissed.
It was not until Simons filed a post-judgment pro se motion for a new trial that he asserted that had been forced to accept appointed counsel against his wishes. This argument presented in a postjudgment motion was untimely and was not preserved for appellant review. Upshaw v. State, 992 So.2d 57, 60 (Ala.Crim.App.2007) (“Upshaw waived his right to self-representation by failing to assert it in a timely manner.”). However, the post-judgment motion was equivocal on the issue of self-representation. Simons first asserted that he wanted to retain different counsel and then stated that he wanted to present his own defense. Nevertheless, as stated above, the record does not support Simons’s assertion that he was forced to proceed to trial with appointed counsel against his wishes. The record discloses that when given the opportunity to waive counsel, Simons stated that he wanted to replace appointed counsel with retained counsel, which the trial court agreed he could do. Therefore, any argument that *22 Simons was denied the right to self-representation must fail because it was not timely preserved and because it has no merit.
II.
Simons was convicted of first-degree cruelty to a cat, a Class C felony. § 13A-11—241(a), Ala.Code 1975. The range of punishment for a Class C felony is a term of imprisonment “not more than 10 years or less than 1 year and 1 day.” § 13A-5-6(a)(3), Ala.Code 1975. The trial court imposed upon Simons an enhanced sentence of 20 years’ imprisonment under subsection (c)(1) of the HFOA See § 13A-5-9(c)(l), Aa.Code 1975. That subsection of the HFOA provides that a defendant who has three felony convictions prior to committing a Class C felony must be “punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years.” § 13A-5-9-(c)(l), Aa.Code 1975.
Simons contends on appeal that his 20-year sentence is illegal. He argues as an issue of first impression that the HFOA has no application following a conviction for cruelty to a dog or a cat. He further correctly asserts that this presents a challenge to the trial court’s jurisdiction to impose the 20-year sentence and must be reviewed regardless of preservation. ‘“[A]n allegedly illegal sentence may be challenged at any time, because if the sentence is illegal, the sentence exceeds the jurisdiction of the trial court and is void.’ ” Mosley v. State, 986 So.2d 476, 477 (Ala.Crim.App.2007)(quoting Rogers v. State, 728 So.2d 690, 691 (Aa.Crim.App.1998)).
‘“Where the appeal concerns only questions of law, “there is no presumption of correctness in favor of the trial court’s judgment; this court’s review of legal issues is de novo.” ’ L.B.S. v. L.M.S., 826 So.2d 178, 185 (Ala.Civ.App.2002) (quoting Morgan Bldg. & Spas, Inc. v. Gillett, 762 So.2d 366, 368 (Ala.Civ.App.2000)). ‘In addition, “[w]hen an appellate court interprets a statute or considers the constitutionality of a statutory provision, no presumption of correctness attaches to the trial court’s interpretation of the statute.” Id. (quoting Monroe v. Valhalla Cemetery Co., 749 So.2d 470, 471-72 (Ala.Civ.App.1999)).”
State v. Adams, 91 So.3d 724, 731-32 (Ala.Crim.App.2010).
Specifically, the HFOA in effect at the time of the offense stated:
“(c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he or she must be punished as follows:
“(1) On conviction of a Class C felony, he or she must be punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years.”
Section 13A-5-9(c)(l), Aa.Code 1975.
There are two degrees of cruelty to a dog or cat. First-degree cruelty is defined in § 13A-ll-241(a) and is a Class C felony. Second-degree cruelty is defined in § 13A-ll-241(b) and is a Class A misdemeanor. First-degree cruelty to a dog or cat is defined as:
“(a) A person commits the crime of cruelty to a dog or cat in the first degree if he or she intentionally tortures any dog or cat or skins a domestic dog or cat or offers for sale or exchange or offers to buy or exchange the fur, hide, or pelt of a domestic dog or cat. Cruelty to a dog or cat in the first degree is a Class C felony. A conviction for a felony pursuant to this section shall not be *23 considered a felony for purposes of the Habitual Felony Offender Act, Sections 13A-5-9 to 13A-5-10.1, inclusive.”
§ 13A-ll-241(a), Ala.Code 1975 (emphasis added).
Simons contends on appeal that the unambiguous, natural, plain, ordinary, and commonly understood meaning of the language “[a] conviction for a felony pursuant to this section shall not be considered a felony for purposes of the Habitual Felony Offender Act,” clearly removes the offense from any application involving the HFOA. Simons argues that as a conviction for a felony in “this section,” i.e., subsection (a), a conviction for first-degree cruelty to an animal “shall not be considered a felony for purposes of the Habitual Felony Offender Act.” Therefore, according to Si-mons, because first-degree cruelty to a cat or dog cannot be considered a felony for HFOA purposes, it has no application in any sense under the HFOA. Therefore, according to Simons, his sentence as enhanced pursuant to the HFOA is an illegal sentence.
The State argues on appeal that the meaning of the statute is unclear. According to the State, the legislature might have meant that the sentence for a conviction for first-degree animal cruelty can be enhanced, but the conviction cannot be used to enhance a subsequent felony-conviction sentence. Thus, the State asserts that the legislature’s intent must be ascertained. The State points to § 32-5A-191(h), Ala. Code 1975, interpreting the legislative intent to be that a sentence for a conviction for first-degree animal cruelty may be enhanced but the conviction for first-degree animal cruelty may not be used to enhance. This section provides the following punishment for a fourth driving-under-the-influence conviction (“DUI”) conviction:
“The Alabama habitual felony offender law shall not apply to a conviction of a felony pursuant to this subsection, and a conviction of a felony pursuant to this subsection shall not be a felony conviction for the purposes of the enhancement of punishment pursuant to Alabama as habitual felony offender law.”
§ 32-5A-191(h), Ala.Code 1975 (emphasis added). The State asserts that because the legislature
“addressed both aspects of the habitual felony offender act when enacting the felony DUI statute, i.e., the enhancement of a felony DUI conviction under the HFOA, and the use of a conviction for a felony conviction under the DUI statute to enhance a different felony conviction, [the legislature] expressly exempted a felony DUI conviction from both purposes.”
(State’s brief, p. 26.) The State argues that the legislature “could have, but did not, explicitly address both aspects of the HFOA in the first-degree cruelty statute.” (State’s brief, p. 26.) It is the State’s contention that the legislature’s treatment of the two statutes injects ambiguity into the sentencing provision of the first-degree-cruelty-to-animals statute because:
“[Ajlthough the legislature could have said so, and did say so in another instance, it did not explicitly state that the Alabama Habitual Felony Offender Law shall not be applied to enhance the punishment for a conviction for first-degree cruelty and did not explicitly address the use of a conviction for first-degree cruelty to enhance a sentence for the conviction of a different felony.
[[Image here]]
“The plain language of the first-degree cruelty statute does not explicitly exempt a conviction under the statute from enhancement under the HFOA. However, it does appear to exempt any convic *24 tion under the statute from being used to enhance the sentence of another felony.”
(State’s brief, p. 27.) Therefore, it is the State’s contention that “Simons’s conviction for first-degree cruelty may be enhanced under the HFOA, but his conviction may not be used as a prior felony conviction to enhance a subsequent felony conviction.” (State’s brief, p. 27-28.) Therefore, according to the State, Simons was properly sentenced as an habitual felony offender.
“It is well settled that ‘[w]ords used in the statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.’ Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa County, 589 So.2d 687, 689 (Ala.1991). ‘[T]he first rule of statutory construction [is] that where the meaning of the plain language of the statute is clear, it must be construed according to its plain language.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 504 (Ala.1993). ‘Principles of statutory construction instruct this Court to interpret the plain language of a statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous.’ Ex parte Pratt, 815 So.2d 532, 535 (Ala.2001).
“ ‘The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute.’ Ex parte State Dep’t of Revenue, 683 So.2d 980, 983 (Ala.1996) (emphasis added). Although legislative intent ‘may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained,’ Ex parte Holladay, 466 So.2d 956, 960 (Ala.1985), ‘[i]n construing [a] statute, this Court should gather the intent of the legislature from the language of the statute itself, if possible.’ Pace v. Armstrong World Indus., Inc., 578 So.2d 281, 283 (Ala.1991). ‘Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive,’ id., and ‘the court must give effect to the clear meaning of that language.’ Beavers v. County of Walker, 645 So.2d 1365, 1376-77 (Ala.1994).
“This fundamental rule of statutory construction applies to penal statutes. ‘Absent any indication to the contrary, the words [in a penal statute] must be given their ordinary and normal meaning.’ Walker v. State, 428 So.2d 139, 141 (Ala.Crim.App.1982). ‘“Penal statutes are to reach no further in meaning than their words,”’ Ex parte Bertram, 884 So.2d 889, 891 (Ala.2003) (quoting Clements v. State, 370 So.2d 723, 725 (Ala.1979), overruled on other grounds by Beck v. State, 396 So.2d 645 (Ala.1980)), and ‘it is well established that criminal statutes should not be “extended by construction,”’ Ex parte Evers, 434 So.2d 813, 817 (Ala.1983) (quoting Locklear v. State, 50 Ala.App. 679, 282 So.2d 116 (1973)).
“In sum, ‘[i]f the language of [a] statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature [in the plain language of the statute] must be given effect.’ Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)). ‘[0]nly if there is no rational way to interpret the words stated will we look beyond those words to determine legislative intent.’ DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 276 (Ala.1998). ‘We should turn to extrinsic aids to determine the *25 meaning of a piece of legislation only if we can draw no rational conclusion from a straightforward application of the terms of the statute.’ 729 So.2d at 277.
“In determining whether judicial construction is required, ‘[t]he language of the entire statute under review must be read together and the determination of any ambiguity must be made on the basis of the entire statute.’ Sheffield v. State, 708 So.2d 899, 907 (Ala.Crim.App.1997). ‘Because the meaning of statutory language depends on context, a statute is to be read as a whole.’ Ex parte Jackson, 614 So.2d 405, 406 (Ala.1993). We must also bear in mind that ‘“[t]here is a presumption that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.” ’ Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.1997) (quoting 82 C.J.S. Statutes § 316 at pp. 551-52 (1953)).”
State v. Adams, 91 So.3d 724, 735-736 (Ala.Crim.App.2010).
We disagree with the State’s argument. As long as the legislative intent for first-degree animal cruelty is clear and unambiguous, the language in the DUI statute is irrelevant. This Court finds the meaning of § 13A-5-241(a) to be plain and clear. The rational, straightforward, reading of the first-degree-animal-cruelty statute explicitly states that first-degree cruelty to a dog or cat is not to be considered a felony for purposes of the HFOA. Because it is not considered a felony for HFOA purposes, a conviction for first-degree cruelty to a dog or cat can have no application under the HFOA, because the HFOA concerns only felony convictions. Therefore, a conviction for first-degree cruelty to a dog or cat cannot be applied as a prior felony conviction to enhance a sentence for a subsequent felony conviction, nor can a prior felony conviction enhance a sentence for a subsequent conviction for first-degree cruelty to a dog or cat.
Moreover, we disagree with the State’s assertion that because the legislature did not explicitly exempt felony animal cruelty from both HFOA purposes as it did with the DUI statute, the animal-cruelty statute must be deemed ambiguous. However, this view ignores the already cited rule that “ ‘[a]bsent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive,’ ... and ‘the court must give effect to the clear meaning of that language.’” State v. Adams, 91 So.3d at 735 (quoting Beavers v. County of Walker, 645 So.2d 1365, 1376-77 (Ala.1994)). Here, the legislature did not draft the first-degree-cruelty-to-a-dog-or-cat statute the same way it did the DUI statute, i.e., two independent clauses joined by the coordinating conjunction “and.” However, it presented the same meaning as if there were two specific clauses when it stated that “[a] conviction for a felony pursuant to this section shall not be considered a felony for purposes of the Habitual Felony Offender Act.” The plural, “for purposes” reflects the existence of more than one purpose. Thus, this further supports for this Court’s interpretation that a first-degree-animal-cruelty conviction serves neither of the HFOA’s dual purposes, i.e., a sentence for first-degree animal cruelty can neither be enhanced nor be used to enhance.
Accordingly, this court affirms Simons’s conviction for first-degree cruelty to a dog or cat, but we remand this cause to the trial court with directions to resentence Simons without application of the HFOA. Due return should be filed with this court no later than 56 days from the date of this opinion.
*26 AFFIRMED AS TO CONVICTION; REMANDED WITH DIRECTIONS AS TO SENTENCING.*
BURKE, J., concurs.
WINDOM, P.J., concurs specially, with opinion.
KELLUM and JOINER, JJ., concur in the result.

. Simons was charged and convicted for beating a kitten to death with his bare fists.

. Of those prior felony convictions, 10 were for breaking into cars, 5 were for second-degree theft of property, and 1 was for first-degree possession of marijuana. The trial court stated on the record that Simons had admitted to those 16 felonies while testifying at his trial.

.Appropriate fines and court cost were imposed.

. The trial court denied the motion for a mental evaluation stating: “Motion for mental exam is denied. The defendant asked that be denied. Based on his conversation with me, letters he's written and all that, he seems to be keenly aware of what’s going on.” (Supplemental Record, R. 5.)

 Note from the reporter of decisions: On August 5, 2016, on return to remand, the Court of Criminal Appeals affirmed, without opinion.